AUSA: Benjamin L. Levander

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> CARL BEZICK and <br> JOSEPH THOMPSON, <br><br> Defendants. | **SEALED COMPLAINT**  25MJ 260 <br><br> Violations of 18 U.S.C. § 1956 <br> and 21 U.S.C. § 846 <br><br> COUNTIES OF OFFENSE: <br> WESTCHESTER/NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

LAWRENCE LONERGAN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Money Laundering)

1. From at least in or about September 2021 through at least in or about January 2025, in the Southern District of New York and elsewhere, CARL BEZICK and JOSEPH THOMPSON, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

2. It was a part and an object of the conspiracy that CARL BEZICK and JOSEPH THOMPSON, the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, trafficking of controlled substances and conspiracy to commit the same, in violation of Title 21, United States Code, Sections 841 and 846, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

3. It was further a part and an object of the conspiracy that CARL BEZICK and JOSEPH THOMPSON, the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, trafficking of controlled substances and conspiracy to commit the same, in violation of Title 21, United States Code, Sections 841 and 846, knowing that the transaction was designed in whole and in part to conceal

and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT TWO
### (Conspiracy to Distribute Controlled Substances)

4.  From at least in or about September 2021 through at least in or about January 2025, in the Southern District of New York and elsewhere, CARL BEZICK and JOSEPH THOMPSON, the defendants, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled-substance laws of the United States.

5.  It was a part and an object of the conspiracy that CARL BEZICK and JOSEPH THOMPSON, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

6.  The controlled substances involved in the offense were testosterone enanthate and trenbolone acetate, in violation of Title 21, United States Code, Section 841(b)(1)(E).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7.  I am a Special Agent with the FBI. In that capacity, I have participated in numerous investigations into money laundering, fraud, and other complex financial offenses, and have spoken with other FBI agents and local law enforcement officers who personally participated in the investigation of this matter, along with other law enforcement agents. I make this Affidavit in part on personal knowledge based on my participation in the investigation; review of reports and other documents prepared by law enforcement agents and others; and physical surveillance.

8.  Throughout this Affidavit, where I assert that a statement was made, I was not the individual to whom the statement was made unless I specifically so state. Rather, information about the statement was provided by someone else to whom I have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and they are set forth in substance and in part, unless otherwise indicated. Similarly, unless otherwise indicated, information in this Affidavit resulting from surveillance does not necessarily set forth my personal observations, but may have been provided to me by other law enforcement agents who observed the events, and to whom I have spoken or whose reports I have read. Furthermore, the facts and circumstances of this investigation have been summarized for the specific purposes of this Affidavit. I have not attempted to set forth the complete factual history of this investigation or all of its details. In making this Affidavit, I rely only on the facts stated herein.

## Overview

9.  Based on my participation in this investigation, my conversations with other law enforcement officers, and my review of law enforcement reports and records, I have learned that CARL BEZICK and JOSEPH THOMPSON, the defendants, and others known and unknown, have been conducting a scheme to sell anabolic steroids and other controlled substances whose distribution is regulated by the Controlled Substances Act through an online website ("www.buygorillaking.com" or "https://buygorillaking.to" or "Gorilla King") and to launder more than $1.5 million of the proceeds of these sales.

## Gorilla King

10. Based on my participation in this investigation, my conversations with other law enforcement officers, my review of reports and records, and my review of the Gorilla King website, I have learned the following:

   a. The Gorilla King website (pictured, in part, below) offers for sale a number of Schedule III controlled substances—including anabolic steroids—as well as prescription pharmaceuticals and other substances associated with the use of performance enhancing drugs.[1] The Gorilla King website also indicates that customers may pay online with "BTC," *i.e.*, Bitcoin, or they may arrange payment through limited other means that can be arranged via email.



   b. The Gorilla King website displays "test reports" from a third-party testing company, purporting to show that the substances, including anabolic steroids, sold by Gorilla King are, in fact, the substances advertised on the Gorilla King website. For example, Gorilla King sells a product labelled "Test E 250mg," and the Gorilla King website displays a test report from the

---

[1] Based on my participation in this investigation, my review of reports and records, my conversations with other law enforcement officers, and my training and experience, I have learned that individuals who use anabolic steroids often engage in "post cycle therapy," in which they consume hormones and other substances in an effort to limit the negative side effects associated with anabolic steroid use.

third-party company purporting to show that a sample of Gorilla King's "Test E" product contained 266.50 mg/ml of testosterone enanthate, a Schedule III controlled substance. The test reports displayed on the Gorilla King website list a particular email address beginning in "gorillaking" (the "Gorilla King Email Address") as the client that requested the test reports from the third-party company.

    c.  In or around August 2023, law enforcement officers identified a United States Postal Service ("USPS") Priority Mail parcel shipped from Warminster, Pennsylvania with a shipping label funded by cryptocurrency (the "August 2023 Parcel") as a potential shipment of controlled substances. Law enforcement officers subsequently interviewed the recipient of the August 2023 Parcel, who stated, in sum and substance, that certain parcels he had received from return addresses in Pennsylvania, such as the August 2023 Parcel, contained anabolic steroids ordered online from Gorilla King.

    d.  The individual who shipped the August 2023 Parcel was captured on USPS cameras in the act of shipping the August 2023 Parcel. Based on my participation in this investigation and my review of records and a photograph from the Pennsylvania Department of Transportation, I recognize the individual who shipped the August 2023 Parcel (pictured below) as JOSEPH THOMPSON, the defendant.



*JOSEPH THOMPSON Shipping the August 2023 Parcel*



*THOMPSON's Photo from Pennsylvania Department of Transportation Records*

4

11.     Based on my participation in this investigation, my conversations with other law enforcement officers, and my review of reports and records, I have learned the following about subsequent purchases of controlled substances from Gorilla King:

      a.     On or about December 5, 2023, law enforcement agents conducted a controlled purchase of the following items from www.buygorillaking.com: (i) four units of "Tren A 100mg"; (ii) four units of "Test E 250mg"; (iii) four units of "Inj. Dbol 80mg"; and (iv) one unit of "Cialis 50mg." The agents purchased these items on the Gorilla King website using Bitcoin and had the items shipped to an address in New York, New York. Laboratory testing revealed that the substance sold as "Test E" contained testosterone enanthate and the substance sold as "Tren A" contained "trenbolone acetate," each of which is a Schedule III controlled substance and an anabolic steroid.

      b.     On or about November 15, 2024, law enforcement agents conducted a second controlled purchase from Gorilla King, placing an order for the same items purchased in the prior, December 5, 2023 controlled purchase. Law enforcement agents purchased these items from Gorilla King using Bitcoin and had the items shipped to the same address in New York as the prior controlled purchase. The shipment from Gorilla King (pictured below) arrived on or about November 22, 2024, and contained items labelled as Anastrazole 1mg tablets, Cialis 50mg, Anavar 20mg, and Drostanolone Enanthate 20mg, as well as twenty units of an unlabeled substance. I understand that Anavar is a brand name for oxandrolone, and that oxandrolone and drostanolone are each Schedule III controlled substances and anabolic steroids.





12.     Based on my participation in this investigation, my conversations with other law enforcement officers, and my review of reports and records, including records from a large commercial medical equipment provider (the "Medical Equipment Company"), I have learned the following:

a.      Between approximately October 2021 and April 2024, the Gorilla King Email Address was used to purchase equipment from the Medical Equipment Company, such as beakers, vials, tubes, fluid pumps, hot plates, and filters. Based on my conversations with other law enforcement officers and my training and experience, I understand this equipment can be used to manufacture anabolic steroids and other substances sold on the Gorilla King website.

b.      Purchases from the Medical Equipment Company were made in the name of a family member ("Bezick Family Member-1") of CARL BEZICK, the defendant, via credit card and Bitcoin. Some of these purchases were shipped to a "Brian Oliver" at a private mailbox at a branch of a commercial interstate mail carrier in or around Philadelphia, PA ("Shipping Address-1"). As described further below, I know that BEZICK uses the name "Brian Oliver" in connection with the Gorilla King business. Further, the Gorilla King Email Address exchanged at least dozens of emails with a representative from the Medical Equipment Company and in these emails provided at least three additional shipping addresses that are private mailboxes at branches of the same commercial interstate mail carrier—one in Cherry Hill, NJ ("Shipping Address-2"), one in Princeton, NJ ("Shipping Address-3"), and one in Blackwood, NJ ("Shipping Address-4"). As described below, Shipping Address-2, Shipping Address-3, and Shipping Address-4 were each registered under a different name and identification used by CARL BEZICK, the defendant.

13.     On or about May 23, 2024, law enforcement agents searched pursuant to a search warrant a sealed silver bag seized from a yet-to-be shipped USPS Priority Mail parcel at a freight-forwarding business in Wilmington, Delaware (the "Wilmington Freight-Forwarder"). The USPS Priority Mail parcel was addressed to "Jason Harris" at Shipping Address-2. As described further below, I know that CARL BEZICK, the defendant, uses the name "Jason Harris" in connection

6

with the Gorilla King business and that Shipping Address-2 is registered to BEZICK under that name. The outside of the sealed silver bag had a sticker with the handwritten notation "TE 1 KG," and inside was a white powder substance (pictured below, still in the silver bag), that was subsequently tested and weighed and revealed to contain approximately 1 kilogram of testosterone enanthate, a Schedule III controlled substance and an anabolic steroid.



Laundering of Proceeds

14. Based on my participation in this investigation, my review of reports and records, and my conversations with other law enforcement officers, I understand that CARL BEZICK and JOSEPH THOMPSON, the defendants, have laundered more than $1.5 million of the illegal proceeds of the Gorilla King business through various means, including: cryptocurrency-to-cash conversion services; other cryptocurrency transactions; and the purchase of more than $120,000 in equipment that can be used to manufacture the substances sold on the Gorilla King website from the Medical Equipment Provider, primarily via Bitcoin.

15. Based on my participation in this investigation, my conversations with other law enforcement officers, my review of reports and records, and my conversations with a confidential source, I have learned the following about an online cryptocurrency-for-cash service:

a. In or about April 2021, the FBI identified a vendor (the "Vendor") going by a unique username on several darknet marketplaces and peer-to-peer cryptocurrency exchanges. The Vendor offered a service to convert bitcoin or other cryptocurrency into cash—namely, to ship cash via USPS Express Mail or Priority Mail to customers within the United States in return for cryptocurrency. In or around January 2023, an undercover officer ("UC-1") made contact with the Vendor via peer-to-peer messaging app and the Vendor indicated to UC-1, in substance and in part, that at least some of the Vendor's clients made money by selling drugs, that the Vendor's wealthiest clients were hackers, and that the Vendor had made approximately $30 million over the prior three years through the exchange of cash for virtual currency.

b.      On or about February 7, 2023, law enforcement arrested an individual who had been mailing packages of cash on behalf of the Vendor from a post office in Westchester County, New York. This individual became a confidential source ("CS-1").[2] Based on my conversations with CS-1 and other law enforcement officers, and my review of law enforcement reports regarding CS-1, I understand that prior to his arrest, CS-1 had been packaging and shipping cash on behalf of the Vendor for approximately 18 months. Following CS-1's arrest, from in or about February 2023 through in or about September 2023, CS-1, as part of his cooperation with this investigation, continued to package and ship cash on behalf of the Vendor. CS-1 identified addresses to which CS-1 frequently shipped packages of cash at the direction of the Vendor as part of the cryptocurrency-for-cash service.

c.      Based on my conversations with CS-1 and other law enforcement officers, my review of law enforcement reports regarding CS-1, and my participation in controlled shipments of cash by CS-1, I know that the addresses to which CS-1 shipped packages of cash at the direction of the Vendor included Shipping Addresses-1 through -4 and a fifth private mailbox address in Haddonfield, New Jersey ("Shipping Address-5"). In total, CS-1 shipped more than $600,000 in cash, at the direction of the Vendor, to Shipping Addresses-1 through -5.

16.     Based on my conversations with other law enforcement officers and employees of the stores where Shipping Address-1 and Shipping Address-2 are located, and my review of reports and records, including records from the stores where the Shipping Addresses are located, I have learned the following about the five Shipping Addresses:

a.      Shipping Address-1 is registered in the name of Bezick Family Member-1. According to an employee who works at the store where Shipping Address-1 is located ("Employee-1"), Shipping Address-1 was frequently used by a man known to employees of that store as "Brian Oliver" and a male associate of "Brian Oliver." Employee-1 provided law enforcement officers with a store surveillance video still-frame of the male associate of "Brian Oliver" (pictured below). Based on my participation in this investigation and review of a photograph from the Pennsylvania Department of Transportation, I recognize the male associate of "Brian Oliver" as JOSEPH THOMPSON, the defendant.

---

[2] In or about February 2023, CS-1 was charged in federal court in another district on charges of violating 18 U.S.C. §§ 1956(h) (money laundering conspiracy) and 371 (conspiracy to commit an offense against the United States). CS-1 has no prior criminal history and assisted the FBI in the hopes of receiving consideration at sentencing. Detailed information provided by CS-1 has proven reliable and has been corroborated.



*THOMPSON at Shipping Address-1*

      b.      Based on my review of records from Shipping Address-2, my participation in a controlled shipment of cash by CS-1 to Shipping Address-2 and review of related records and surveillance, my review of records from the Pennsylvania Department of Transportation, and my conversations with other law enforcement officers, an employee of Shipping Address-2, and CS-1, I have learned the following:

           i.      Shipping Address-2 is registered under the name "Jason Harris." An employee of the store where Shipping Address-2 is located ("Employee-2") provided law enforcement with surveillance video of "Jason Harris" (pictured below) and a copy of the purported Ohio State Drivers License used by "Jason Harris" to register Shipping Address-2. I looked at the surveillance video, and the man identified as "Jason Harris" appears to be CARL BEZICK, the defendant. Further, there is no record in the Ohio State Bureau of Motor Vehicles of that driver's license issued in the name of "Jason Harris." The photograph on the "Jason Harris" driver's license also appears to be BEZICK.



*CARL BEZICK at Shipping Address-2*

9



*BEZICK's Photo from Pennsylvania Department of Transportation Records*

ii. Based on my participation in a controlled shipment of cash by CS-1 and review of related records and surveillance, I know that on or about September 6, 2023, CS-1 shipped a package of cash via Express Mail to Shipping Address-2, at the direction of the Vendor, and that law enforcement agents observed CS-1 fold the package before shipping it. On or about September 7, 2023, law enforcement agents were conducting surveillance outside the store where Shipping Address-2 is located and observed BEZICK exit the store with an individual believed to be BEZICK's family member, who was holding an Express Mail package folded in the same manner in which CS-1 folded the package of cash CS-1 had shipped to Shipping Address-2. BEZICK and the girl got into a silver Cadillac sedan with a Pennsylvania license plate registered to Bezick Family Member-1 and departed. The agents subsequently conducted surveillance at BEZICK's residence, where they observed 4 parked vehicles: (i) the silver Cadillac sedan; (ii) a second vehicle registered to Bezick Family Member-1; (iii) a vehicle registered to BEZICK; and (iv) a vehicle registered to JOSEPH THOMPSON, the defendant.

c. Like Shipping Address-2, Shipping Addresses-3 through -5 were registered under fake names using false identification bearing a photograph of CARL BEZICK, the defendant. Thus, Shipping Address-3 was opened under the name "Jacob Thompson" using a purported Maryland State Drivers License in that name. There is no record in the Maryland Motor Vehicle Administration of that license issued in the name "Jacob Thompson." Shipping Address-4 was opened under the name "James Williams" using a purported Maryland State Drivers License in that name. There is no record in the Maryland Motor Vehicle Administration of that license issued in the name "James Williams." Shipping Address-5 was opened under the name "William Harris" using a purported Maryland State Drivers License in that name. There is no record in the Maryland Motor Vehicle Administration of that license issued in the name "William Harris." The four false drivers' licenses bearing the names "Jason Harris," "Jacob Thompson," "James William,s" and "William Harris" each bears what appears to be the same photograph of CARL BEZICK, the defendant.

17. Based on my participation in this investigation, my conversations with other law enforcement officers, and my review of reports and records, I know that CARL BEZICK has registered at least two additional Shipping Addresses—Shipping Address-6 and Shipping Address-7—under false names using false identification. Based on my review of records from the store where Shipping Address-6 is located and my conversations with other law enforcement officers, I know that Shipping Address-6 is a private mailbox in Vorhees, New Jersey that was opened under the name "Andrew Papadimitriou" using a purported Ohio State Drivers License in that name.

There is no record in the Ohio Motor Vehicle Administration of that license issued in the name "Andrew Papadimitriou." Based on my review of records from the store where Shipping Address-7 is located and my conversations with other law enforcement officers, I know that Shipping Address-7, a private mailbox in Marlton, New Jersey, was opened under the name "Orion Diamandis" using a purported Ohio State Drivers License in that name. There is no record in the Ohio Motor Vehicle Administration of that license issued in the name "Orion Diamandis." The false Ohio drivers licenses bearing the names "Andrew Papadimitriou" and "Orion Diamandis" each bears what appears to be the same photograph of CARL BEZICK, the defendant.

18. Based on my review of USPS and United States Postal Inspection Service records and my conversations with other law enforcement officers, I know that between on or about January 1, 2024 and on or about August 26, 2024—after CS-1 ceased shipping cash on behalf of the Vendor—Shipping Address-1, Shipping Address-2, Shipping Address-5, Shipping Address-6, and Shipping Address-7 collectively received approximately 29 USPS parcels mailed via Priority Mail and Priority Mail Express, sent from the Orlando, Florida area, with postage purchased using third-party postage services. Such services allow customers to buy and print postage without using their own names. On or about September 27, 2024, law enforcement agents, including myself, searched pursuant to a search warrant one of those approximately 29 USPS parcels, which was addressed to "Jason Harris," an alias of CARL BEZICK, the defendant, at Shipping Address-2. Within the parcel, agents discovered a package of $5,000 in U.S. currency (pictured below). Based on the timing of the receipt of the approximately 29 packages—shortly after CS-1 ceased shipping cash—and the contents of the searched package, I believe the approximately 29 shipments from the Orlando area were from a new cryptocurrency-to-cash service being used by the operators of the Gorilla King business—CARL BEZICK and JOSEPH THOMPSON, the defendants, and others known and unknown.



19. Based on my review of records provided by a cryptocurrency marketplace ("Cryptocurrency Marketplace-1"), I have learned that on or about May 9, 2024, an account under the name "clasus" was created on Cryptocurrency Marketplace-1. Cryptocurrency Marketplace-1 has a "chat" function, through which users can communicate with one another. Based on my

review of chats and transactions records from Cryptocurrency Marketplace-1, I know that the "clasus" account conducted approximately 83 cryptocurrency-for-cash transactions, totaling more than $820,000, through Cryptocurrency Marketplace-1. Based on my review of chats from Cryptocurrency Marketplace-1, I know that, in connection with those cryptocurrency-for-cash transactions, the "clasus" account provided Shipping Address-1, Shipping Address-2, Shipping Address-4, Shipping Address-5, Shipping Address-6, and Shipping Address-7, among others, as the address to which cash should be sent in exchange for cryptocurrency sent by "clasus."

20. Based on my review of chats and transaction records provided by Cryptocurrency Marketplace-1, I know that a particular user of Cryptocurrency Marketplace-1 ("Individual-1") engaged in cryptocurrency-for-cash transactions with the "clasus" account through Cryptocurrency Marketplace-1. Further, in connection with those transactions, Individual-1 was directed by the user of the "clasus" account to ship cash to certain of the Shipping Addresses. Additionally, the user of the "clasus" account, in chatting with Individual-1, referred to having also engaged in cryptocurrency-for-cash transactions with Individual-1 through a second online cryptocurrency marketplace ("Cryptocurrency Marketplace-2"). Based on my review of records provided by Individual-1, I know that Individual-1 ships cash in exchange for cryptocurrency through Cryptocurrency Marketplace-2. Further, based on my review of records from Individual-1 relating to transactions conducted through Cryptocurrency Marketplace-2, I know that, between approximately February 2023 and March 2024, Individual-1 engaged in cryptocurrency-for-cash transactions on Cryptocurrency Marketplace-2 with multiple users who directed Individual-1 to ship cash to one or more of the Shipping Addresses in exchange for cryptocurrency. Based on my review of records provided by Individual-1, I know that Individual-1 shipped at least approximately $350,000 in cash through such cryptocurrency-for-cash transactions on Cryptocurrency Marketplace-2.

21. Based on the foregoing, I believe that CARL BEZICK and JOSEPH THOMPSON, the defendants, and others known and unknown, have agreed to operate and are operating the illegal Gorilla King business and have agreed to launder and are laundering the proceeds thereof.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of CARL BEZICK and JOSEPH THOMPSON, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

_____
LAWRENCE LONERGAN
Special Agent
Federal Bureau of Investigation

Sworn to before me this 27th day of January, 2025.

_____
THE HONORABLE ANDREW E. KRAUSE
United States Magistrate Judge
Southern District of New York